**[Cite as *State v. McNeil*, 2020-Ohio-3202.]**

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-51 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-745 |
| | : | |
| DIAMOND L. McNEIL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 5th day of June, 2020.

. . . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
　　　Attorney for Plaintiff-Appellee

KRISTIN L. ARNOLD, Atty. Reg. No. 0088794, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
　　　Attorney for Defendant-Appellant

. . . . . . . . . . . . .

FROELICH, J.

{¶ 1} Diamond L. McNeil pled guilty in the Clark County Court of Common Pleas to an amended charge of attempted felonious assault, a third-degree felony. The trial court imposed a maximum sentence of 36 months in prison and ordered her to pay $1,800 in restitution and court costs. McNeil appeals from her conviction, claiming that the trial court improperly considered certain evidence regarding the incident in determining her prison sentence. For the following reasons, the trial court's judgment will be affirmed.

{¶ 2} According to the record, on August 19, 2018, McNeil was employed at a Speedway gas station in Springfield. At approximately 12:47 a.m., McNeil contacted the police about an intoxicated woman, Lesley Moore, who was bothering customers outside the store and refused to leave. The police responded within a few minutes and advised Moore to leave, which she did at approximately 12:53 a.m.

{¶ 3} Within ten minutes, Moore returned to the Speedway. Rather than calling the police again, McNeil called two individuals she knew, who came to the Speedway. At approximately 1:18 a.m., the three argued with Moore outside the store's front entrance and then physically assaulted her, kicking and punching her head and body. When Moore followed the group inside the store, Moore was knocked down, and McNeil dragged Moore out by her hair and kicked her. Moore walked away from the Speedway at approximately 1:23 a.m.

{¶ 4} At 3:18 a.m., different police officers were dispatched to another location, where they encountered Moore, who appeared to have been severely beaten and was confused and making threatening statements. Moore was transported by ambulance to the hospital. Due to her injuries, Moore was then transported by CareFlight to Miami

Valley Hospital, where she was placed on a ventilator and feeding tube for several days. Moore suffered a non-displaced jaw fracture and serious bruising and swelling to her eye.

{¶ 5} A grand jury subsequently indicted McNeil for felonious assault, a second-degree felony. On May 19, 2019, McNeil entered a plea to an amended charge of attempted felonious assault. The State indicated at sentencing that it was reducing the charge to allow the case to be resolved without Moore's having to testify. After a Crim.R. 11 plea colloquy, the trial court accepted McNeil's guilty plea to attempted felonious assault, and it ordered a presentence investigation (PSI).

{¶ 6} The trial court conducted a sentencing hearing on June 4, 2019. The State asked for a prison sentence, citing the severity of the Moore's injuries and McNeil's lack of remorse. Defense counsel argued that McNeil was remorseful, that Moore's behavior contributed to the offense, albeit not to the extent that it raised a defense, and that McNeil, who was 19 years old, had no history of similar behavior and no prior criminal record. Defense counsel noted that McNeil's Ohio Risk Assessment Survey (ORAS) score was very low. Defense counsel argued that community control was appropriate and that McNeil would do well on community control. McNeil, speaking on her own behalf, apologized, said she "make[s] mistakes," and "ask[ed] for another chance."

{¶ 7} Prior to imposing sentence, the trial court indicated that it had reviewed the PSI. The PSI included, among other things, McNeil's description of the offense; information about McNeil's family background, employment, health, finances, and criminal history; the indictment; the bill of particulars; police reports and probable cause affidavits; McNeil's drug and alcohol assessment; the ORAS report; the plea agreement; a victim impact statement from Moore's mother; and copies of text messages regarding

the incident. The PSI also included two CDs: one contained Speedway's surveillance videos between midnight and 2:00 a.m. and the other contained Moore's medical records, photographs of Moore at the hospital, a social media video of the incident, and videos of McNeil's police interview.[1]

{¶ 8} Prior to imposing sentence, the trial court responded to McNeil's oral statement, saying:

> You participated in the beating of a drunk woman to the point that she had to be CareFlighted to the hospital with severe injuries, and you want me to accept that as a mistake of a 19 year old. You called the police the first time she was bothering the customers. The second time you called for family and friends, and they showed up and you let them in. They prepared to go out and fight with you; and the three of you went out, confronted this woman who was still highly intoxicated; and when in her drunken stupor she decided she was going to follow the three of you back in after you knocked her down outside, you beat her up. Then you grabbed her by the hair and drug her outside of the customer area, back into the parking lot, and then you punched her and kicked her while she was down.

> Tell me how that's a mistake. That's a rhetorical question. I don't need an answer to that.

> All the things that your attorney put on are probably quite true, that

---

[1] On September 10, 2019, this appellate court asked the trial court to clarify what exhibits it had considered. The trial court responded that it had reviewed the CD containing the Speedway surveillance videos, as well as "part of the victim's medical [record] in order to verify [the] extent of the victim's injuries, and the photos, social media video and the defendant's interview."

the victim wouldn't go away. Even when confronted with three younger people, she was too drunk to understand her own danger. Everything she said about mitigation, I believe the State took into consideration when they amended the obvious felonious assault to an attempted felonious assault.

I've gone through this presentence report which, as indicated, did include a victim-impact statement from the victim's mother and videos of the incident. I've reviewed everyone's statements. I note in reporting substance abuse, you indicate only using marijuana, starting when you were 15 or 16, daily use; and then denied any alcohol or other drug use. * * * I'm also reviewing the information from McKinley Hall and their assessment where you stated to them you drink about a liter a day.

{¶ 9} The trial court told McNeil that it had considered the record, oral statements, written documents (including defense counsel's sentencing memorandum), the purposes and principles of sentencing, and the statutory sentencing factors. The court found that Moore had suffered serious physical harm and that McNeil did not show genuine remorse. The court stated that McNeil was 19 years old and had no prior criminal record, but emphasized the seriousness of Moore's injuries. The court commented, "I guess what struck me the most, watching the videos, was the total lack of regard for another person's human dignity." The court noted that McNeil had no military service record and that she had a low ORAS score. The court then imposed a maximum sentence of 36 months in prison. It also ordered her to pay restitution of $1,800 to Moore and court costs.

{¶ 10} McNeil appeals from her conviction, claiming that the trial court "abused its discretion when it reviewed evidence of the alleged incident for purposes of sentencing

when Appellant previously pled guilty to a lesser offense resulting in an inappropriate sentence." McNeil focuses on the court's review of the surveillance video footage of the assault.

{¶ 11} In reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2), rather than an abuse of discretion standard. *See State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 9. Under R.C. 2953.08(G)(2), an appellate court may increase, reduce, or modify a sentence, or it may vacate the sentence and remand for resentencing, only if it "clearly and convincingly" finds either (1) that the record does not support certain specified findings or (2) that the sentence imposed is contrary to law. *State v. Huffman*, 2d Dist. Miami No. 2016-CA-16, 2017-Ohio-4097, ¶ 6.

{¶ 12} "The trial court has full discretion to impose any sentence within the authorized statutory range, and the court is not required to make any findings or give its reasons for imposing maximum or more than minimum sentences." *State v. King,* 2013-Ohio-2021, 992 N.E.2d 491, ¶ 45 (2d Dist.). However, in exercising its discretion, a trial court must consider the statutory policies that apply to every felony offense, including those set out in R.C. 2929.11 and R.C. 2929.12. *State v. Leopard*, 194 Ohio App.3d 500, 2011-Ohio-3864, 957 N.E.2d 55, ¶ 11 (2d Dist.), citing *State v. Mathis*, 109 Ohio St.3d 54, 2006-Ohio-855, 846 N.E.2d 1, ¶ 38.

{¶ 13} McNeil does not specifically argue that her 36-month sentence was unsupported by the record or contrary to law. Rather, she asserts that, "[w]hen an individual enters a guilty plea, it is not appropriate for the court to review evidence of the incident in question prior to sentencing." We disagree.

{¶ 14} We have repeatedly stated that, for purposes of sentencing, a court "is not confined to [considering] the evidence that strictly relates to the conviction offense because the court is no longer concerned * * * with the narrow issue of guilt." *State v. Bowser*, 186 Ohio App.3d 162, 2010-Ohio-951, 926 N.E.2d 714, ¶ 14 (2d Dist.); *see, e.g.*, *State v. Waggoner*, 2d Dist. Montgomery No. 28453, 2020-Ohio-212, ¶ 12. Sentencing courts may consider, for example, "hearsay evidence, facts related to charges that were dismissed pursuant to a plea bargain, and allegations contained in a PSI report." *State v. Bautista*, 2d Dist. Clark No. 2015-CA-74, 2016-Ohio-5436, ¶ 12, citing *State v. Clemons*, 2d Dist. Montgomery No. 26038, 2014-Ohio-4248, ¶ 8. In light of this precedent, we find no error in the trial court's consideration of the surveillance video from the Speedway, the social media video of the incident, and other evidence concerning the assault at issue in this case.

{¶ 15} To support her argument, McNeil cites to *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St.3d 456, 2002-Ohio-6719, 780 N.E.2d 548. In *Layne*, the Ohio Supreme Court addressed the Adult Parole Authority's use of then-new guidelines for determining the range of time that a prisoner should serve before being released. Under the guidelines, the parole authority relied on a combination of two factors: the seriousness of an offender's criminal offense and the offender's risk of recidivism. Three prisoners who had pled to reduced charges sued, claiming that the parole authority improperly assigned an offense category score based on the alleged criminal activity, not the offenses for which they were convicted. *Id.* at ¶ 24.

{¶ 16} On review, the Ohio Supreme Court held that, "[i]n any parole determination involving indeterminate sentencing, the Adult Parole Authority must assign an inmate the

offense category score that corresponds to the offense or offenses of conviction." *Id.* at syllabus. The Court further emphasized, however, that "the APA, when considering an inmate for parole, still retains its discretion to consider any circumstances relating to the offense or offenses of conviction, including crimes that did not result in conviction, as well as any other factors the APA deems relevant." (Citations omitted.) *Id.* at ¶ 28.

{¶ 17} McNeil's reliance on *Layne* is misplaced. *Layne* does not govern the circumstances before us, i.e., the imposition of sentence, nor is it dispositive as to whether the trial court improperly considered surveillance video of the incident at Speedway. The trial court was required to impose a sentence within the statutory range for the offense to which McNeil pled (attempted felonious assault), which it did, and the trial court could consider any "circumstances relating to the offense" in determining an appropriate sentence within that authorize range for attempted felonious assault. The trial court not err at sentencing when it considered the surveillance video and the other evidence concerning the assault.

{¶ 18} McNeil's assignment of error is overruled.

{¶ 19} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

John M. Lintz
Kristin L. Arnold
Hon. Richard J. O'Neill